

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 5, 2023

**BY CM/ECF**
The Honorable Kimba M. Wood
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: *United States* v. *Tyrone Thurmond*, S2 20 Cr. 504 (KMW)

Dear Judge Wood:

  The defendant in the above-captioned case is scheduled to be sentenced on July 12, 2023 at 11:30 a.m. For the reasons set forth below, the Government believes that the Stipulated Guidelines Sentence of 120 months' imprisonment would be sufficient, but not greater than necessary, to satisfy the purposes of sentencing.

  **I.** **Offense Conduct**

  On March 22, 2019, at approximately 2:58 p.m., the defendant Tyrone Thurmond and his co-defendant Timothy Mitchell participated in a non-fatal shooting of a man (the "Shooting Victim") who was sitting inside of a car in front of a residential home.[1] (Presence Report ("PSR") ¶ 9). Prior to the shooting, Thurmond conducted reconnaissance of the shooting location and of the victims. At approximately 2:38 p.m., Thurmond, driven by another individual, went by the shooting location where the intended victim was sitting in a car. In that moment, likely because he observed the intended victim at the location, Thurmond placed several calls to Mitchell. Thereafter, Thurmond went to pick up Mitchell at Mitchell's residence. (PSR ¶ 10). Subsequently, Thurmond, this time with Mitchell in tow, drove back to approximately a block away from where the intended victim was sitting. (*Id.*). Mitchell exited the vehicle, walked up to the car where the Shooting Victim and another individual was sitting, and fired at least nine times into the vehicle at close range before fleeing the scene. (PSR ¶ 10). Law enforcement officers who responded to the scene found the Shooting Victim had suffered life-threatening injuries, including gunshot wounds to the chest, neck, and arm. (PSR ¶ 11). The Shooting Victim was rushed to the hospital, where physicians determined that the Shooting Victim had a very low pulse due to the loss of blood and damage to the Shooting Victim's lungs, requiring that the Shooting Victim be placed in a coma for at least 48 hours. (*Id.*).

---

[1] Paragraph 9 of the PSR incorrectly states the time of shooting as approximately 2:15 p.m. This is typo from the Government.

This shooting was in retaliation for a previous shooting where Thurmond had been shot and injured. (PSR ¶ 9). Thurmond supplied Mitchell with the firearm and ammunition to commit the shooting, and he had offered to pay Mitchell after Mitchell was arrested and detained for a second shooting six months later in September 2019. (PSR ¶¶ 11, 12).

### II.     The Defendant's Plea and Applicable Guidelines Range

On September 15, 2022, the defendant pleaded guilty pursuant to a plea agreement to one count of aiding and abetting a felon in possession of ammunition, relating to the March 2019 shooting. The Court accepted the defendant's guilty plea on December 14, 2022.

Pursuant to U.S.S.G. § 2K2.1(c)(1)(A), the plea agreement stipulated that the defendant used or possessed the ammunition in connection with the commission or attempted commission of an attempted murder. As a result, pursuant to U.S.S.G. §§ 2X1.1 and 2A2.1(a)(1), the plea agreement stipulated that the base offense level was 33 because the object of the offense would have constituted first-degree murder. Pursuant to U.S.S.G. § 2A2.1(b)(1)(A), the plea agreement stipulated that a four-level enhancement applied because the victim sustained permanent or life-threatening bodily injury. As a result, the plea agreement stipulated that the offense level is 34. Assuming a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, the plea agreement stipulated that the total offense level is 31. The plea agreement also stipulated that the defendant has seven criminal history points, resulting in a Criminal History Category of IV. Based upon these calculations, the plea agreement stipulated that the defendant's Guidelines range would be 210 to 262 months. Pursuant to U.S.S.G. § 5G1.1(a), however, the plea agreement stipulated that the Guidelines sentence is 120 months' imprisonment because the statutorily authorized maximum sentence is less than the minimum of the applicable Guidelines range. (PSR ¶ 4).

In the PSR, prepared on December 7, 2022, the Probation Office similarly found that the Guidelines sentence is 120 months' imprisonment.

### III.    Discussion

#### A.  Applicable Law

Although *United States* v. *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant

Hon. Kimba M. Wood  Page 3
July 5, 2023

policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7).  *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)  to afford adequate deterrence to criminal conduct;
> (C)  to protect the public from further crimes of the defendant; and
> (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. The Stipulated Guidelines Sentence of 120 Months' Imprisonment is Warranted in this Case.

The Government respectfully submits that a sentence of 120 months' imprisonment is necessary in this case to reflect the seriousness of the defendant's conduct, promote respect for the law, and provide just punishment for the offense.

A sentence of 120 months' imprisonment is necessary here to reflect the seriousness of the defendant's crimes and the harm that he caused in the community.  In March 2019, the defendant was an integral participant to a brutal attempted murder of the Shooting Victim in the middle of the afternoon on a residential block, just as school was letting out.  Thurmond was not the triggerman.  But it was Thurmond who provided Mitchell with the firearm.  Thurmond who found the Shooting Victim during a drive through the neighborhood less than twenty minutes before the shooting took place.  Thurmond who called Mitchell to let him know where the Shooting Victim was.  It was Thurmond who picked up Mitchell at his house.  And it was Thurmond for whom the shooting was intended to avenge, for a previous shooting where Thurmond had been shot the Summer before.  Thus, Thurmond is no less than equally responsible when Mitchell walked up to the Shooting Victim's vehicle, shot nine times nine times into the car at point-blank range at the Shooting Victim.  Thurmond is no less than equally responsible for the permanent injuries that the Shooting Victim, who nearly died at the hospital, continues to endure.  And Thurmond is no less than equally responsible for the fear that Mitchell's gunshots instilled in that neighborhood—a tree-lined street of townhouses and an elementary school.  At the time that Thurmond and Mitchell brutally plotted to shoot and kill the Shooting Victim, innocent bystanders were just walking into and out of their homes, and parents and children were getting ready for the end of a school day at a nearby elementary school.

The defendant's actions demonstrate a total and complete disregard for the value of human life and for the law.  A sentence of 120 months is warranted to reflect the seriousness of the defendant's brazen acts of violence.

Hon. Kimba M. Wood  Page 4
July 5, 2023

      The defendant's long and repeated criminal history and individual characteristics also demonstrate that a lengthy term of imprisonment is necessary here. The instant conviction is the defendant's seventh conviction and sixth felony conviction. This is also the defendant's third firearms offense. In fact, in 2003, the defendant was convicted in this very district of this exact same crime—felon in possession of a firearm—for which the defendant was sentenced to 24 months' imprisonment followed by three years of supervised release. While the defendant was on supervised release, he moved to Pennsylvania and was convicted of drug dealing. And though he was not convicted of another firearms offense, according to the Probation Office from the Eastern District of Pennsylvania, officers found two stolen firearms next to bags of crack cocaine when they searched his apartment. This history demonstrates that prior terms of incarceration were insufficient to deter the defendant from his dangerous and violent behavior, particularly with respect to firearms offenses. It also reflects that the defendant was not amenable to court supervision, as he evidently had little qualms about returning to drug dealing and firearms even while on supervised release.

      The defendant's most recent conviction before the instant conviction was in July 2011. He was sentenced to 18 to 60 month's imprisonment, and he was paroled in November 2013. That most recent term of incarceration did not deter the defendant from returning to criminal activity. In addition to the instant offense (which occurred just over five years after his release from his most recent term of incarceration), according to the defendant's own statements to the Probation Office, he appeared to have returned to illicit activities for income. The defendant admitted to spending thousands of dollars per week on marijuana purchases prior to his arrest in 2020. (PSR ¶ 57). At the same time, the defendant last reported employment was in 2010. He claims to also having "work[ed] off the books doing side jobs for cash income," such as "painting, floor waxing and stripping, and other manual labor tasks." (PSR ¶¶ 64-66). However, his list of "side jobs" hardly explain the source of wealth supporting his self-reported expensive marijuana habit.

      Against the backdrop of this extensive and repeated criminal history, the defendant's claim of rehabilitation rings hollow. Tellingly, despite self-reporting substantial substantive abuse—of marijuana, Percocet, and K2 while in prison—the defendant has "indicated that he is not open to receiving further [drug] treatment." (PSR ¶ 61). The Court should have no confidence that the defendant is interested in rehabilitation

      Put together, the defendant has engaged in violent and dangerous crimes over the span of multiple decades until his arrest in 2020 for the instant offense. The defendant has returned to criminal activity time and again since he was sixteen years old. He was nearly 37 at the time he committed the instant offense. Clearly neither the defendant's age nor his prior terms of incarceration have been sufficient to deter or otherwise prevent the defendant from committing violent crimes that endanger the community. Incapacitation should be one of the Court's primary considerations imposing a sentence here. The defendant is a danger to the community, and a lengthy sentence is necessary to protect the public from further crimes by the defendant.

Hon. Kimba M. Wood  Page 5
July 5, 2023

### IV. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose the stipulated Guidelines sentence of 120 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:  /s/
Ni Qian/Andrew K. Chan
Assistant United States Attorneys
(212) 637-2364/1072

cc: Counsel for Tyrone Thurmond (by CM/ECF)